# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 SEP 10 AM 11:50

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| SHAWN F. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-040 |
| | ) | |
| Warden JASON D. MEDLIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, who is currently incarcerated at Dodge State Prison in Chester, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1]  Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984).  Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted.[2]  28 U.S.C.

---

[1] Although he is now incarcerated at Dodge State Prison, the allegations in Plaintiff's complaint all concern events alleged to have taken place during Plaintiff's incarceration at Wheeler Correctional Facility ("WCF"), located in Alamo, Georgia. (See generally doc. no. 1.)

[2] Following submission of his original complaint, Plaintiff filed an amended complaint. (Doc. no. 5.) Because Defendants have neither been served nor filed an answer, Plaintiff was authorized to amend his complaint as a matter of right. See Fed. R. Civ. P.

§§ 1915(e) & 1915A.[3]

## I.  BACKGROUND

Plaintiff names the following Defendants in his complaint: (1) Jason Medlin, the Warden of Wheeler Correctional Facility ("WCF"); (2) FNU Wright, Program Coordinator at WCF; (3) J. Sikes, an investigator for WCF; (4) FNU Saunders, a Physician's Assistant ("P.A.") at WCF; (5) FNU Allen, another P.A. at WCF; and (6) FNU Clark, the Medical Director at WCF.  (Doc no. 1, pp. 1, 4.)

Plaintiff first alleges that, while incarcerated at WCF, he spent a month complaining about blood in his urine, swelling of his feet, extreme pain, intense sweating at night, and trouble walking.  (Id. at 5.)  Plaintiff alleges that he filed a grievance concerning his complaints and was sent to the medical unit for attention, where he was seen by Defendant Allen.  (Id.)  During his appointment with Defendant Allen, Plaintiff alleges that Defendant Allen told him that she would order "[a] lab or x-rays to be taken," but that she never did so. (Id.)  A month later, Plaintiff alleges that he filed another grievance concerning the same

---

15(a)(1); see also Mayle v. Felix, 545 U.S. 644, 655 (2005) ("Before a responsive pleading is served, pleadings may be amended once as a 'matter of course,' *i.e.*, without seeking court leave." (citing Fed. R. Civ. P. 15(a))).  Following the filing of his amended complaint, however, Plaintiff filed a request to withdraw the amended complaint.  (Doc. no. 10, p. 1.) Therefore, the Court will proceed to screen only Plaintiff's original complaint.

[3]Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee.  However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

issues, and that he was then seen by Defendant Saunders. (Id.) Plaintiff alleges that Defendant Saunders told him that Defendant Allen had not ordered labs, x-rays, or medication following Plaintiff's appointment with her. (Id.)

Plaintiff next alleges that Defendant Saunders, after ordering a lab and x-rays herself, failed to follow up with Plaintiff's results, in that, three weeks after the lab was taken, his results still had not come back. (Id. at 6.) Plaintiff asserts that the nature of his condition, which he notably does not identify, called for an emergency lab which should have been taken long before it actually was, and that he "should have been placed in medical for observation." (Id.) Plaintiff asserts that Defendant Clark, as Medical Director at WCF, displayed deliberate indifference to Plaintiff's medical needs because "she did not oversee the outcome of the situation" or "assume her duties" of overseeing the duties of Defendants Saunders and Allen. (Id. at 5.)

Plaintiff alleges that Defendant Medlin, the Warden of WCF, "purposely aided medical in acts of cruel and unusual punishment and deliberate indifference by allowing medical to knowingly refuse Plaintiff adequate medical attention for 3 months." (Id. at 7.) Plaintiff alleges that he sent Defendant Medlin three handwritten letters and five inmate request forms and that Defendant Medlin refused to do anything about them. (Id.) Plaintiff further alleges that, on one occasion, Defendant Medlin verbally threatened him, saying "you['re] going to be in more pain than you've been complaining about." (Id. at 7.) Plaintiff alleges that, presumably in relation to the above acts, Defendant committed "criminal negligence" and "terroristic threats." (Id. at 12.)

3

Plaintiff next alleges that, on March 21, 2012, Defendant Wright refused to allow Plaintiff to go to the medical unit when he complained of suffering from "unknown conditions," noting that medical would only prescribe him ibuprofen. (Id. at 9.) Plaintiff alleges that he was in extreme pain and was suffering from those unknown conditions as a result of the medical unit's negligence in failing to order a lab and x-rays, as described above. (Id.) In response to Plaintiff's request, Plaintiff alleges that Defendant Wright accused him of being a "dope head needing a fix" and that he then, while walking away from Plaintiff's cell, said, "[S]uck my dick." (Id.) Plaintiff alleges that, based on that event, Defendant Wright denied him access to medical treatment and "verbally sexually assaulted" him. (Id.)

Although not expressly stated in the complaint, it appears that Plaintiff filed a Prison Rape Elimination Act ("PREA") grievance stemming from Defendant's Wright's alleged "suck my dick" statement, and that the grievance was investigated by Defendant Sikes. (Id. at 10.) Plaintiff alleges that Defendant Sikes inadequately investigated the PREA grievance, violated due process by not sending the grievance to Internal Affairs, violated the confidentiality of the PREA grievance process, and retaliated against Plaintiff for filing the grievance. (Id. at 10, 12.) Plaintiff also alleges that Defendant Wright threatened to "get Plaintiff 5 more years for made up allegations of assault on employee." (Id. at 6.)

In his request for relief, Plaintiff seeks an award of monetary damages against each Defendant. (Id. at 12.)

## II. DISCUSSION

### A. No Claim for Deliberate Indifference to Serious Medical Need

*Liberally* construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for deliberate indifference to a serious medical need against Defendants Allen, Saunders, and Wright.

Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (noting that the deliberate indifference standard requires a prison official to have disregarded an excessive risk of which he was actually aware).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. Farmer 511 U.S. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere

5

negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted); see also Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). The Eleventh Circuit has held that to state a viable Eighth Amendment claim, a prisoner must allege that the defendant acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Allegations of mere negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Additionally, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (per curiam); Adams, 61 F.3d at 1546; Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

### 1.    No Claim Against Defendants Allen and Saunders

First, Plaintiff alleges that Defendants Saunders and Allen failed to provide adequate treatment for his conditions. (Doc. no. 1, pp. 5-6.) Notably, Plaintiff does not assert that Defendants Saunders and Allen generally failed to treat him; in fact, he states that, in response to both of his grievances, he was sent to the medical unit to be examined. (Doc. no.

1, p. 5.) Rather, he takes issue with the treatment that he was given, noting that Defendant Allen never ordered a lab or x-rays, and that Defendant Saunders, despite ordering a lab and x-rays, failed to follow up with the results of those orders. (Id. at 5-6.) Plaintiff further alleges that his lab should have been ordered long before it was and that either Defendant Allen or Defendant Saunders should have placed him in the medical unit for observation. (Id. at 6.) Plaintiff's claims, therefore, amount to mere disagreements with the judgment of Defendants Allen and Saunders as to what sort of treatment was necessary to address his medical issues. As those claims evince only a disagreement with Defendants' course of treatment, they do not demonstrate the "grossly incompetent, inadequate, or excessive" medical treatment necessary to sustain a claim of deliberate indifference. Adams, 61 F.3d at 1544.

Furthermore, Plaintiff's allegations that unspecified labs and x-rays should have been ordered before they actually were, and that he should have been placed in the medical unit for observation, are simply too vague and conclusory to support the Eighth Amendment claim that Plaintiff attempts to assert. See Taylor v. Singletary, 148 F.3d 1276, 1285 (11th Cir. 1998) (holding that a "bare, conclusory allegation . . . is insufficient, without more, to warrant further evidentiary consideration"); see also Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (noting that conclusory allegations are not entitled to an assumption of truth in determining whether a complaint states a claim upon which relief may be granted). Moreover, even assuming that Plaintiff's condition constitutes an objectively serious medical need, Plaintiff's allegations are insufficient with regard to any of these Defendants being deliberately indifferent to that need. The alleged failure by Defendant Allen to order labs and

x-rays is plainly inadequate as a factual basis for a claim of deliberate indifference, especially where the complaint neither indicates why labs or x-rays might have been needed nor alleges any injury suffered as a result of not receiving the tests immediately. See Goebert, 510 F.3d at 1326. Moreover, Plaintiff offers no indication of the type of treatment with which he was provided or how that treatment was inadequate.

Finally, to the extent that Plaintiff claims that Defendant Saunders acted with deliberate indifference by failing to follow up with his lab and x-ray results, the fact that the results had not yet come back when Plaintiff filed his complaint - three weeks after the lab and x-rays were taken - likewise does not exhibit any sort of grossly incompetent medical treatment, especially where Plaintiff asserts no injury related to the alleged delay. (Doc no. 1, p. 6.) Moreover, to the extent that Plaintiff asserts that Defendants Allen and Saunders have acted negligently by failing to provide him with the treatment that he believes that he needs, allegations of negligence likewise do not amount to a claim of deliberate indifference. Harris, 941 F.2d at 1505; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Therefore, Plaintiff fails to state a viable § 1983 claim against Defendant Allen or Defendant Saunders for deliberate indifference to a serious medical need.

### 2. No Claim Against Defendant Wright

Next, Plaintiff fails to state a claim for deliberate indifference to a serious medical need against Defendant Wright. Plaintiff alleges that Defendant Wright refused to allow him to visit the medical unit when he requested that he be allowed to go during inspection, and that, when Defendant Wright asked him the reason for the visit, he told Defendant Wright

that he was suffering from "unknown conditions." (Doc. no. 1, p. 9.) In short, Plaintiff does not allege that Defendant Wright was aware of any serious medical condition to which he could have then acted with deliberate indifference, given that Plaintiff's vague assertion that he was suffering from "unknown conditions" was insufficient to put Defendant Wright on notice of a "sufficiently serious" medical problem. Farmer 511 U.S. at 834.

**B.      No Sexual Abuse Claim Against Defendant Wright**

Plaintiff's complaint also fails to state a viable sexual abuse claim against Defendant Wright. The extent of Plaintiff's sexual abuse claim against Defendant Wright is that, following Plaintiff's request that he be taken to the medical unit to be examined for "unknown" issues, Defendant Wright told Plaintiff to "suck [his] dick" as he walked away from Plaintiff's cell. (Doc. no. 1, p. 9.)

Under Eleventh Circuit law, "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006). A plaintiff seeking to establish a valid Eighth Amendment sexual abuse claim must satisfy two requirements, one of which is objective and the other subjective. The objective component requires that the conduct at issue cause an injury that is "objectively, sufficiently serious," meaning an injury that is "more than *de minimis*." Id. (quoting Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997), and Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)). The subjective component "requires the prison official have a 'sufficiently culpable state of mind.'" Id. (quoting Boddie, 105 F.3d at 861).

Here, Plaintiff has alleged that Defendant Wright made a single verbal statement with sexual language and connotations, which plainly falls short of severe or repetitive sexual

9

abuse. Given that Defendant Wright was walking away from Plaintiff's cell when he made the statement, it further appears that he meant the comment as a dismissive and crude way to end his conversation with Plaintiff, and not as a serious demand. (Doc. no. 1, p. 9.) Moreover, Plaintiff has alleged no injury, physical or otherwise, resulting from the purported incident. Plaintiff therefore fails to satisfy the objective component of the applicable standard in that he has not alleged any injury, let alone an injury of sufficient gravity to establish an Eighth Amendment violation. Cf. Boxer X, 437 F.3d at 1111 (concluding that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury"); see also Allen v. McDonough, Case No. 407-CV-469, 2011 U.S. Dist. LEXIS 107984, at *14 (N.D. Fla. Aug. 17, 2011) (collecting cases in support of the proposition that "one incident of non-violent harassment alone [is] not sufficient to meet the cruel and unusual punishment standard"). Accordingly, Plaintiff's complaint fails to state a viable claim of sexual abuse against Defendant Wright.

### C.    No Claims Based On Defendant Sikes's Investigation

#### 1.    No Grievance or Inadequate Investigation Claim

First, Plaintiff's complaint fails to state a viable due process claim against Defendant Sikes concerning his PREA grievance. Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011). Therefore, Plaintiff's allegations regarding Defendant Sikes's purported mishandling of his grievance fail to state a § 1983 claim upon which relief may be granted. See id.; see also Massey v. Helman, 259 F.3d 641,

647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

Similarly, Plaintiff fails to state a viable claim that Defendant Sikes violated his due process rights by inadequately investigating his grievance, especially considering that the alleged inadequacy appears to simply be Defendant Sikes urging Plaintiff to discontinue his pursuit of what Defendant Sikes saw as a meritless claim. (Doc. no. 1, p. 10.) Regardless of Defendant Sikes's intentions, Plaintiff has no constitutional right to an investigation of an incident such as the one alleged in his complaint. See Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (holding that there was no constitutional right to an investigation following a violent incident based upon which the plaintiff raised a claim of excessive force); see also Edler v. Schwarz, 2010 U.S. Dist. LEXIS 81570, at *30 (11th Cir. May 13, 2010) (holding that the PREA did not require an investigation where plaintiff did not allege that he had any actual physical contact with an officer's penis following the officer's demand for oral sex).

Notably, the PREA itself seeks to compile data and statistics concerning incidences of prison rape and to adopt standards to combat the same, and does not confer upon Plaintiff

any extra rights outside of the normal prison grievance system. See generally 42 U.S.C. §§ 15601-15609; see also Jones v. Schofield, 2010 U.S. Dist. LEXIS 20064, at *7 (M.D. Ga. Mar. 4, 2010) (noting that the "PREA does not confer a private right of action to individuals"). Therefore, to the extent that Plaintiff claims that his grievance is due additional attention or that any confidentiality provision was violated, those claims fail in that no additional attention is required, nor do any constitutionally-mandated confidentiality provisions exist. See generally 42 U.S.C. §§ 15601-15609. Furthermore, Plaintiff has not alleged any injury resulting from his public conversation concerning the circumstances of his PREA grievance. (Doc. no. 1, p. 7.)

## 2. No Claim for Deliberate Indifference to Safety

Plaintiff's vague allegation of deliberate indifference against Defendant Sikes, which appears to be premised on Defendant Sikes's knowledge of the circumstances of Plaintiff's PREA grievance, lacks sufficient specificity and fails to provide adequate factual support for Plaintiff's attempted claim. See Taylor, 148 F.3d at 1285; Randall, 610 F.3d at 709. Plaintiff appears to make his claim of deliberate indifference against Defendant Sikes as an afterthought, given that it is simply lumped in with his various other claims against Defendant Sikes with no facts alleged to support it. (Doc. no. 1, p. 10.)

To the extent that Plaintiff's allegation is intended to assert that Defendant Sikes acted with deliberate indifference to his safety based on the assertion within Plaintiff's PREA grievance – an allegation that is far from being clearly made in the complaint – Plaintiff has failed to allege that there was an actual serious risk of harm of which Defendant Sikes was aware. See Farmer 511 U.S. at 837. This is especially true given that the purported "verbal

12

sexual abuse" that is the subject of Plaintiff's PREA grievance does not, as explained above, amount to an actionable claim of sexual abuse, and that Plaintiff has alleged no injury or threat of injury in connection with the circumstances of his grievance. (Doc. no. 1, p. 9.) Plaintiff therefore fails to state a claim of deliberate indifference to safety against Defendant Sikes.

### 3. No Retaliation Claim

Plaintiff also fails in his attempt to state a retaliation claim against Defendant Sikes, in support of which he alleges that, as a response to Plaintiff "filing a grievance on his co-worker" – presumably Defendant Wright – Defendant Sikes tried to persuade Plaintiff to throw away his grievance, noting that it "would not help him make parole," and otherwise failed to adequately pursue the grievance. (Doc. no. 1, p. 10.)

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may state a cognizable § 1983 claim by alleging that the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254. Of note, there must be a causal connection between the protected speech and the retaliatory action. Id. at 1250;

13

O'Bryant v. Finch, 637 F.3d 1207, 1216-20 (11th Cir. 2011).

Here, Plaintiff does not properly allege that he suffered any "adverse action" based on any supposed retaliatory actions by Defendant Sikes, given that the only actions that Plaintiff describes are somewhat negative comments that Defendant Sikes made during routine conversations concerning the validity of Plaintiff's PREA grievance, and a failure to adequately investigate, which, as explained above, fails as a claim. (Doc. no. 1, p. 10.) Plaintiff also does not allege any facts from which it may be reasonably inferred that his grievance bears any causal relationship to Defendant Sikes's supposedly retaliatory actions. See O'Bryant, 637 F.3d at 1220; see also Allen, 2011 U.S. Dist. LEXIS 107984, at *17 ("Conclusory allegations of retaliation without 'some facts' that would indicate the retaliatory act was in retaliation for filing grievances is not sufficient." (citation omitted)). Finally, Plaintiff does not allege that Defendant Sikes's actions deterred him from exercising his First Amendment rights or, in fact, that they caused him to suffer any consequences at all. (Doc no. 1, p. 10.) Plaintiff has therefore failed to state a retaliation claim upon which relief may be granted against Defendant Sikes.

### D.     No Claims Against Defendants Medlin and Wright Based on Verbal Threats

To the extent that Plaintiff asserts a claim of deliberate indifference to his health or safety against Defendant Medlin based on Defendant Medlin's alleged threat that Plaintiff would be "in more pain than [he had been] complaining about," that allegation fails to state an actionable claim, given that Defendant Medlin's comment constituted only a verbal threat. Similarly, to the extent that Plaintiff asserts that Defendant Wright retaliated against him based on Defendant Wright's alleged threat to somehow extend Plaintiff's sentence by five

14

years for filing the PREA grievance, that allegation also fails to state an actionable claim. "Generally, 'verbal threats, without more,' are insufficient 'to state a cause of action under the Eighth Amendment.'" Cummings v. Harrison, 695 F. Supp. 2d 1263, 1272 (N.D. Fla. Jan. 8, 2010) (citing Chandler v. District of Columbia Dept. of Corrections, 145 F.3d 1355, 1360 (D.C. Cir. 1998)). The isolated verbal threats that Plaintiff alleges Defendants Medlin and Wright to have made do not fall within any of the categories of verbal threats that courts have recognized as potentially violative of the Eighth Amendment. Chandler 145 F.3d at 1361 (noting that courts have found repeated threats of physical harm and sexual harassment to be potentially violative of the Eighth Amendment). Furthermore, Plaintiff does not claim that Defendants Medlin and Wright actually followed through with their alleged threats, or that he suffered any injury as a result of those threats.

Thus, Plaintiff has failed to state a claim for relief against either Defendant Medlin or Defendant Wright based on their alleged verbal threats.

### E. No Supervisory Liability Claim Against Defendants Clark and Medlin

Plaintiff attempts to hold Defendants Clark and Medlin responsible for the acts of their subordinates, which include several of the other parties named as Defendants in this case. (See generally doc. no. 1.) However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, supervisors cannot be sued under § 1983 simply on a theory of *respondeat superior.* See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D.

Fla. 2000) (citing <u>Powell v. Shopco Laurel, Co.</u>, 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. <u>Hartley</u>, 193 F.3d at 1269 (citing <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990)).

Here, the extent of Plaintiff's allegations against Defendant Clark is that, as WCF's Medical Director, she "failed to oversee" the actions of Defendants Saunders and Allen. (Doc. no. 1, p. 5.) Plaintiff makes various allegations against Defendant Medlin, including that, as Warden, he allowed the medical unit to refuse Plaintiff adequate medical attention. (Doc. no. 1, p. 7.) Nowhere does Plaintiff mention that either Defendant Clark or Defendant Medlin actually participated in any purported constitutional violation, which is especially problematic in light of the fact that, as explained above, Plaintiff's allegations against Defendant Clark's and Medlin's subordinates fail to state a valid claim for deliberate indifference or for any other sort of relief.

Even if there did exist underlying constitutional violations for which to attempt to hold Defendants Clark and Medlin accountable, Plaintiff fails to allege a "causal connection" between Defendants Clark and Medlin and the alleged constitutional violations. <u>See Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal

16

connection" can be established "when a history of widespread abuse[4] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendants Clark and Medlin.[5] Accordingly, Plaintiff has failed to state a viable Eighth Amendment claim against Defendants Clark and Medlin, given that they cannot be held responsible for the actions of their subordinates under a theory of supervisory liability, and that Plaintiff does not show a causal connection between either Defendant and the alleged constitutional violations.

---

[4]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[5]Alleging that he sent multiple letters and inmate request forms to Defendant Medlin (doc. no. 1, p. 7) does not satisfy the burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's medical care. Cf. Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions); see also Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (pointing to single or isolated incidents not sufficient to indicate supervisor's approval of complained of inaction).

**F.     No Federal Basis for Other Claims**

In his request for relief, Plaintiff asserts that Defendant Medlin displayed criminal negligence and made terroristic threats against him. (Doc. no. 1, p. 12.) Such claims do not allege constitutional violations for the purposes of § 1983, and they will not be separately addressed by the Court, especially given that the circumstances that the claims are intended to encompass are addressed within the rubric of § 1983 above. To the extent that Plaintiff may have been attempting to bring state law claims under the Court's supplemental jurisdiction, those claims may not be brought, given that the Court has determined that Plaintiff's claims that might have arguably served as the basis for original federal court jurisdiction should be dismissed.

This Court derives its authority to decide Plaintiff's federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." Id. § 1367(c)(3).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. .
> . . A proper resolution of the two state law causes of action will require a

18

careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. ... We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, as the Court has determined that the claims arguably serving as the basis for original federal court jurisdiction should be dismissed, the Court also concludes that any potential state law claims should be dismissed without prejudice so that Plaintiff may, if he chooses, pursue them in state court.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted, that any potential state law claims be **DISMISSED** without prejudice, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this *10th* day of September, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE